UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| HATTIE P.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:19-cv-39 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Hattie P., on January 24, 2019. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Hattie P., filed an application for Supplemental Security Income on November 21, 2013, alleging a disability onset date of November 21, 2013. (Tr. 15). The Disability Determination Bureau denied Hattie P.'s application initially on July 23, 2014, and again upon reconsideration on February 17, 2015. (Tr. 15). Hattie P. subsequently filed a timely request for a hearing, but she failed to appear for her scheduled hearing and her case was dismissed on March 14, 2017. (Tr. 15). The Appeals Council ordered the Administrative Law Judge (ALJ), Michelle Whetsel, to give Hattie P. another opportunity for a hearing on June 16, 2017. (Tr. 15). A video hearing was held on January 3, 2018 before ALJ Whetsel, and the ALJ issued an unfavorable decision on January 24, 2018. (Tr. 15-29). Vocational Expert (VE) Clifford M. Brady appeared at the hearing via teleconference. (Tr. 15). The Appeals Council

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Hattie P. had not engaged in substantial gainful activity since November 21, 2013, the application date. (Tr. 17).

At step two, the ALJ determined that Hattie P. had the following severe impairments: borderline intellectual functioning, anxiety, depression, and obesity. (Tr. 17). The ALJ found that the medically determinable impairments significantly limited Hattie P.'s ability to perform basic work activities. (Tr. 17). The ALJ also determined that Hattie P. had the following non-severe impairments: strep throat, knee pain, diabetes mellitus with diabetic neuropathy, hypertension, hyperlipidemia, chronic bronchitis, and migraines. (Tr. 18). However, the ALJ found that these impairments did not cause more than a minimal limitation on her ability to perform basic work activities, and therefore were non-severe. (Tr. 18).

At step three, the ALJ concluded that Hattie P. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 18).

Although no longer a listed impairment, the ALJ considered Hattie P.'s obesity in relation to the musculoskeletal, respiratory, and cardiovascular body systems listings, as required by SSR 02-1p. (Tr. 18). Next, the ALJ considered the severity of Hattie P.'s mental impairments. (Tr. 18). The ALJ found that Hattie P.'s mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.02, 12.04, 12.05, and 12.06. (Tr. 18). In making this finding, the ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include:

understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.

(Tr. 18). The ALJ indicated that a marked limitation means the ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited, while an extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 18).

The ALJ determined that Hattie P. had moderate limitations in understanding, remembering, or applying information; a moderate limitation in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations adapting or managing herself. (Tr. 19-20). Because Hattie P.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B criteria was not satisfied. (Tr. 20). Additionally, the ALJ determined that Hattie P. did not satisfy the paragraph C criteria. (Tr. 20). Furthermore, the ALJ concluded that Hattie P. did not have the adaptive defects necessary to meet listing 12.05. (Tr. 21).

After consideration of the entire record, the ALJ then assessed Hattie P.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant can lift and carry fifty pounds occasionally and twenty-five pounds frequently. The claimant can sit for six hours and stand and/or walk for six hours in a standard workday. The claimant can occasionally climb stairs and ramps, but cannot climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can remember and follow simple, but not detailed instructions. The claimant can perform the tasks assigned, but not always at a production rate pace; she can however, meet her end of day work goals. The claimant can have occasional contact with coworkers, supervisors, and the general public. The claimant can occasionally adapt to rapid changes in the workplace.

(Tr. 21). The ALJ explained that in considering Hattie P.'s symptoms she followed a two-step process. (Tr. 22). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Hattie P.'s pain or other symptoms. (Tr. 22). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Hattie P.'s functioning. (Tr. 22).

Hattie P. alleged that she was disabled from any and all work secondary to her impairments. (Tr. 22). After considering the evidence, the ALJ found that Hattie P.'s medically determinable impairments reasonably could be expected to produce her alleged symptoms. (Tr. 22). However, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 22).

The ALJ assigned some weight to the opinions of the State agency medical consultants who opined that Hattie P. could perform work at the medium exertional level. (Tr. 25). The ALJ found that limiting Hattie P. to work at a medium level was consistent with the medical record. (Tr. 25). The medical record reflected that Hattie P. had engaged in little treatment for chronic medical impairments and that she had few limitations during her consultative examination. (Tr. 25). The ALJ assigned some weight to medical consultative examiner, Dr. J. Bartlett, D.O. (Tr. 25). After examining Hattie P., Dr. Bartlett found that she could sit for as long as she wanted and stand for a long period of time. (Tr. 25). He also found that she could lift and handle objects and that her eyesight was unimpeded. (Tr. 25). The ALJ afforded little weight to the opinion of treating physician, Dr. R. Roberts, M.D., because it was inconsistent with the record as a whole. (Tr. 26).

Furthermore, the ALJ afforded some weight to the State agency psychological experts who opined that Hattie P. had some mental limitations but that she was still capable of performing tasks. (Tr. 26). The ALJ gave some weight to the opinion of Hattie P.'s most recent psychological examiner, Dr. J, Polczinksi, Psy.D., and little weight to her prior psychological examiner, Dr. A. Taylor, Ph.D. (Tr. 26). The ALJ also afforded some weight to the opinion of Hattie P.'s treating psychiatrist, Dr. P. Varghese, M.D. (Tr. 27). The ALJ indicated that the RFC was supported by the objective medical evidence, the opinions of the State agency consultants, and Hattie P.'s psychological consultative examiners. (Tr. 28). Also, the ALJ considered Hattie P.'s testimony, reports, and allegations in forming the RFC. (Tr. 28).

At step four, the ALJ found that Hattie P. had no past relevant work. (Tr. 28). Considering Hattie P.'s age, education, work experience, and RFC, the ALJ determined that there were jobs in the national economy that she could perform, including hand packager (141,000 jobs nationally), production helper (26,700 jobs nationally), and assembler (34,500 jobs nationally). (Tr. 29). The ALJ found that Hattie P. had not been under a disability, as defined in the Social Security Act, from November 21, 2013, the date the application was filed. (Tr. 29).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have

5

defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. § 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404,**

**subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f)**; *see* **Biestek v. Berryhill,** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying his opinion regarding job availability, does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Hattie P. has requested that the court reverse the ALJ's decision and award benefits, or in the alternative, remand this matter for additional proceedings. In her appeal, Hattie P. has argued that: (1) the ALJ erred in evaluating the opinion of treating physician, Dr. Roberts; (2) the ALJ erred in evaluating the opinion of treating psychiatrist, Dr. Varghese; (3) the ALJ erred in assessing the mental RFC limitations; and (4) the ALJ did not properly consider her subjective allegations pursuant to SSR 16-3p.

For claims like Hattie P.'s filed before March 27, 2017, a treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.

**20 C.F.R. § 416.927(c)(2)**; *see* **Bates v. Colvin**, 736 F.3d 1093, 1099 (7th Cir. 2013); **Punzio v. Astrue**, 630 F.3d 704, 710 (7th Cir. 2011); **Schmidt v. Astrue**, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." **Clifford v. Apfel**, 227 F.3d 863, 870 (7th Cir. 2000) (quoting **Scivally v. Sullivan**, 966 F.2d 1070, 1076 (7th Cir. 1992)).

"'[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight' and becomes just one more piece of evidence for the ALJ to consider." **Bates**, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. **Schmidt**, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see, e.g.*, **Latkowski v. Barnhart**, 93 F. App'x 963, 970-71 (7th Cir. 2004); **Jacoby v. Barnhart**, 93 F. App'x 939, 942 (7th Cir. 2004). If the ALJ was unable to discern the basis for the treating physician's determination, the ALJ must solicit additional information. **Moore v. Colvin**, 743 F.3d 1118, 1127 (7th Cir. 2014) (citing **Similia v. Astrue**, 573 F.3d 503, 514 (7th Cir. 2009)). Ultimately, the weight accorded to a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." **Hofslien v. Barnhart**, 439 F.3d 375, 377 (7th Cir. 2006) (internal citations omitted); *see* **Punzio**, 630 F.3d at 713.

If the ALJ decides that the treating physician's opinion should not be given controlling weight, the ALJ is "required by regulation to consider certain factors in order to decide how much weight to give the opinion." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). These factors are set forth in **20 C.F.R. § 416.927(c)(1)-(5)** and include: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) supportability; 4) consistency with the record as a whole; and 5) whether the treating physician was a specialist in the relevant area.

In December of 2017, Dr. Roberts completed an RFC assessment. She opined that Hattie P. could sit up to four hours in an eight-hour workday and stand/walk up to a half an hour in an eight-hour workday. (Tr. 1092). Moreover, Dr. Roberts indicated that Hattie P. could lift and carry up to ten pounds occasionally and should avoid lifting anything heavier. (Tr. 1092). Finally, Dr. Roberts found that Hattie P. could not use her hands for sustained, repetitive action during an eight-hour workday. (Tr. 1092). The ALJ afforded Dr. Roberts' opinion little weight because it was inconsistent with the record as a whole. (Tr. 26). Specifically, the ALJ noted that during the consultative examination Hattie P. was able to stand for extended periods, did not have issues lifting and carrying twenty pounds, and used her hands or feet for a sustained period. (Tr. 26).

Hattie P. has argued that the ALJ's decision to afford little weight to Dr. Roberts was not supported by substantial evidence. She contends that the ALJ failed to consider many of the factors set forth in 20 C.F.R. § 416.927(c) that favored Dr. Roberts' opinion. Also, Hattie P. has argued that the ALJ erred when she found that Dr. Roberts' opinion was inconsistent with the findings of Dr. Bartlett. Finally, Hattie P. contends that if the ALJ needed more information regarding Dr. Roberts' opinion, she should have requested clarification.

The ALJ acknowledged that Dr. Roberts was a treating source. Yet, the ALJ afforded little weight to her opinion because she found that it was inconsistent with the record as a whole. Moreover, the ALJ indicated that Dr. Roberts' findings lacked explanation. The ALJ specifically noted inconsistencies in the opinions of Dr. Bartlett and Dr. Roberts. Generally, opinions from one-time examining sources are entitled to less weight than the opinions provided by treating physicians. *See* **20 C.F.R. § 416.927(c)(1).** However, the ALJ noted that Hattie P.'s medical records revealed very little treatment for physical impairments. (Tr. 26). Moreover, the ALJ concluded that Hattie P. seemed "mostly normal physically" and that her only severe chronic medical impairment was obesity. (Tr. 25).

In deciding not to give controlling weight to Dr. Roberts' opinion, the ALJ has followed the standards outlined in the regulations. The ALJ did not err in failing to explicitly address all of the factors because some factors were not pertinent to the reasons the ALJ gave for not affording Dr. Roberts' opinion controlling weight. The ALJ is required only to "minimally articulate" her reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." ***Berger v. Astrue***, 516 F.3d 539, 545 (7th Cir. 2008); ***Elder v. Astrue***, 529 F.3d 408, 415 (7th Cir. 2008). The ALJ met the minimal articulation standard here.

Next, Hattie P. has argued that the ALJ erred in evaluating the opinion of her treating psychiatrist. Dr. Varghese completed a medical source statement in December of 2017. She opined that Hattie P. would be seriously limited in her ability to remember work-like procedures; maintain attention for a two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms;

perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; and maintain socially appropriate behavior. (Tr. 1088-89). Dr. Varghese found that Hattie P. would be absent from work more than four days per month. (Tr. 1090).

The ALJ afforded some weight to Dr. Varghese's opinion. (Tr. 27). The ALJ acknowledged that Dr. Varghese was Hattie P.'s treating psychiatrist. However, the ALJ noted some inconsistencies in his opinion. First, the ALJ indicated that she provided more restrictive limitations in the RFC than opined by Dr. Varghese regarding remembering and following instructions. Next, the ALJ noted an internal inconsistency in Dr. Varghese's medical source statement. Dr. Varghese opined that Hattie P. would be absent more than four days per month from work. However, in a separate section of the medical source statement Dr. Varghese found that Hattie P. was "seriously limited, but not precluded" from maintaining regular attendance and completing a normal workday and workweek without interruptions from psychologically-based symptoms and maintaining regular attendance with strict tolerances. The ALJ concluded that the record did not support that Hattie P. would need to be absent from work an inordinate amount of time and that Dr. Varghese, himself, indicated that Hattie P. was not precluded from maintaining regular attendance and completing a normal workday and workweek without interruptions from psychologically-based symptoms. (Tr. 27). The ALJ adequately has explained why she afforded Dr. Varghese's opinion only some weight. Accordingly, remand is not appropriate on this issue.

Next, Hattie P. has argued that the ALJ erred in evaluating her mental RFC limitations. "The RFC is an assessment of what work-related activities the claimant can perform despite his

11

limitations." ***Young v. Barnhart***, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 416.945(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence—including statements from medical sources about what the claimant still can do—as well as "other evidence, such as testimony by the claimant or his friends and family." ***Craft v. Astrue***, 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 416.945(a)(3).**

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." ***Getch v.***

*Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, she cannot ignore evidence that undermines her ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

Hattie P. suffered from severe impairments of borderline intellectual functioning, anxiety, and depression. (Tr. 17). The ALJ concluded that these impairments produced moderate limitations in concentrating, persisting, or maintaining pace. (Tr. 19). The ALJ, in assessing the RFC, found that Hattie P. could remember and follow simple, but not detailed, instructions; she could perform the tasks assigned, but not always at a production rate pace; she could meet her end of day work goals; she could have occasional contact with coworkers, supervisors, and the general public; and she occasionally could adapt to rapid changes in the workplace. (Tr. 21). The ALJ did not explain how she determined that Hattie P. could not meet a "production rate pace" but could meet "end of day work goals." Moreover, Hattie P. has argued that the jobs identified by the VE, including hand packager, production helper, and assembler, could not be performed at the end of the day. *See Novak v. Berryhill,* 2017 WL 1163733, at *7 (N.D. Ill. 2017) ("Indeed, requiring a plaintiff to meet end-of-day requirements without keeping a particular pace throughout the day envisions 'a tortoise-and-the-hare scenario in which [the] plaintiff would be unable to keep pace consistently throughout the day but could somehow catch up later in the day,' and the ALJ did not point to anything in the record suggesting that Plaintiff

13

would have such 'bursts of productive energy' throughout the day.").

The ALJ considered the psychological consultative examination that was performed in June of 2014. She noted that the examiner indicated that Hattie P. was able to understand at least simple instructions and that her memory, attention, and concentration abilities would be adequate for routine tasks. (Tr. 24). However, the ALJ's analysis that Hattie P. could not always perform tasks at a production rate pace, but could meet end of day work goals was unsupported by the record. Neither the ALJ nor the Commissioner indicated any evidence, whether medical opinion or testimony, in support of the RFC finding that Hattie P. could meet her end of day work goals. From December of 2015 to November of 2017, treatment notes indicated that Hattie P. had difficulty maintaining concentration. (Tr. 518, 600, 812). Moreover, Dr. Varghese, whose opinion the ALJ afforded some weight, found that Hattie P. was seriously limited in her ability to maintain attention for a two-hour segment and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 1088). Therefore, the ALJ has failed to build a logical bridge between the evidence and her conclusion that Hattie P. could meet end of day work goals.

Furthermore, Hattie P. has argued that the ALJ did not create a logical bridge between the evidence and her conclusion that Hattie P. occasionally could adapt to rapid changes in the workplace. The Commissioner chose not to specifically address this argument. The ALJ indicated in her decision that in considering the record as a whole and because Hattie P. had lost relatives in 2013 and did not decompensate or need to be hospitalized, she was stable enough to occasionally adapt to rapid changes in the workplace. (Tr. 25). It is unclear how the ALJ determined that the loss of relatives five years prior to the hearing indicated that Hattie P. occasionally could adapt to rapid changes in the workplace. Therefore, the ALJ has not provided

enough analysis for the court to provide meaningful review of the appropriateness of the RFC, and remand is appropriate.

Finally, Hattie P. has argued that the ALJ's evaluation of her subjective symptoms was legally insufficient. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue,* 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must explain her evaluation with specific reasons that are supported by the record. *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013). An ALJ must assess the claimant's subjective symptoms rather than assessing her "credibility."

Under SSR 16-3, the ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at *4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(i) The individual's daily activities;

(ii) Location, duration, frequency, and intensity of pain or other symptoms;

(iii) Precipitating and aggravating factors;

15

(iv) Type, dosage, effectiveness, and side effects of any medication;

(v) Treatment, other than medication, for relief of pain or other symptoms;

(vi) Other measures taken to relieve pain or other symptoms;

(vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. § 416.929(c)(3).**

The ALJ discounted Hattie P.'s statements concerning the intensity, persistence, and limiting effects of her symptoms because they were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 23). Hattie. P. has argued that "not entirely consistent" is not the legal standard; rather, the ALJ must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record. However, under SSR 16-3p, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." SSR 16-3p, 2016 WL 1119029, at *8; *see also* **20 C.F.R. § 416.929(a).** Therefore, the use of the boilerplate phrase "not entirely consistent" is not, alone, a basis for remand. *See* **Robert v. Berryhill,** 2018 WL 4565385, at *7-8 (C.D. Ill. Sept. 24, 2018); *see also* **Parker v. Astrue,** 597 F.3d 920 (7th Cir. 2010).

Hattie P. has challenged the ALJ's subjective symptom evaluation because the ALJ's decision contained no discussion of which allegations she found consistent with the record. A mere recitation of Hattie P.'s medical records alone is not enough. *See* SSR 16-3p, 2016 SSR WL 1119029, *5 ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions. We will evaluate an individual's symptoms considering all the evidence in his or her record."). In sum, the ALJ may not disregard Hattie P.'s statements about symptoms solely based on objective medical evidence. SSR 16-3p, 2016 WL 1119029, at *5.

The ALJ's decision considered the objective medical evidence, the course of Hattie P.'s treatment, the findings of the examiners, and the medical opinions. However, the ALJ could have indicated more clearly which allegations she found consistent or inconsistent with the record.

Hattie P. has presented additional arguments that the ALJ erred with the symptom evaluation that compels remand. She contends that the ALJ erred when she found that Hattie P.'s mental health treatment had been mostly routine. (Tr. 24). The court recognizes that the ALJ's consideration of Hattie P.'s mental health treatment was relevant in evaluating her subjective symptoms. However, the ALJ's statement was conclusory. Moreover, the ALJ noted that although Hattie P. had reported several symptoms, including manic symptoms, anxiety, depression, and hearing voices, she never had been hospitalized for psychiatric reasons and she never hurt herself or others during the relevant period. (Tr. 24). Hattie P. asserts that there is no requirement that she be psychiatrically hospitalized on a routine basis for her allegations of disabling mental limitations to be true. (citing ***Voigt v. Colvin***, 781 F.3d 871, 876 (7th Cir. 2015)). It was improper for the ALJ to discount Hattie P.'s alleged symptoms based on lack of medical treatment, specifically psychiatric hospitalization.

Hattie P. also has argued that the ALJ did not properly evaluate the difficulties she had in performing activities of daily living. She testified that she had a case manager who reminded her to perform tasks such as cleaning her house. (Tr. 47). Hattie P. also indicated that the case manager made sure she attended her doctor appointments. (Tr. 46-47). An ALJ must consider a claimant's activities of daily living when she assesses a claimant's subjective allegations. SSR 16-3p, 2016 WL 1119029, at *6. If an ALJ finds that a claimant's activities of daily living are inconsistent with her subjective allegations, the ALJ must identify which particular activity of

17

daily living contradicts a particular subjective allegation and the ALJ must identify the contradiction.  *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).  The ALJ did not do so here.  On remand, the ALJ should reevaluate Hattie P.'s subjective symptom allegations in accordance with SSR 16-3p.

Hattie P. has requested that the court remand for an award of benefits.  An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits."  *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).  The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits.  *Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).  The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 18th day of December, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge